IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

RSUI INDEMNITY COMPANY,

      Plaintiff/Counter-Defendant,

v.

NATIONAL YOUTH ADVOCATE
PROGRAM, INC.,

      Defendant/Counter-Claimant.

Case No. 2:23-cv-891
District Judge Michael H. Watson
Magistrate Judge Jolson

**PLAINTIFF/COUNTER-DEFENDANT RSUI INDEMNITY COMPANY'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Plaintiff/Counter-Defendant RSUI Indemnity Company ("RSUI") respectfully moves the Court for judgment on the pleadings on its claims against Defendant/Counter-Claimant National Youth Advocate Program, Inc. ("NYAP") and on NYAP's claims against RSUI. A memorandum in support of this motion is attached hereto.

Respectfully submitted,

/s/ Sabrina Haurin
Sabrina Haurin (0079321)
Jolene S. Griffith (0084940)
BAILEY CAVALIERI LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215-3422
Telephone: (614) 221-3155
shaurin@baileycav.com
jgrifith@baileycav.com

Counsel for Plaintiff/Counter-Defendant
RSUI Indemnity Company

1

**MEMORANDUM IN SUPPORT**

I.     **INTRODUCTION**

Plaintiff/Counter-Defendant RSUI Indemnity Company ("RSUI") is entitled to judgment on the pleadings on its claims against Defendant/Counter-Claimant National Youth Advocate Program, Inc. ("NYAP") and on NYAP's claims against it because there is no coverage for the Charge of Discrimination filed by one of NYAP's employees against the employee's supervisor (the "Claim") under the insurance policy that RSUI issued to NYAP (the "Policy"). The Policy contains a clear and unambiguous "Sexual Misconduct Exclusion," which precludes coverage for any "Claim" alleging, arising out of, based upon or attributable to or in any way involving, directly or indirectly, any sexual behavior, sexual abuse, sexual assault, or any sexual act against any individual. It is undisputed that the Claim arises out of and involves allegations of sexual assault and, as such, there is no coverage for the Claim under the Policy. And, because there is no coverage for the Claim under the Policy, as a matter of law, NYAP's claim for bad faith fails. For these reasons and as further explained below, RSUI respectfully requests that the Court enter judgment on the pleadings on its claims against NYAP and on NYAP's claims against it.

II.     **BACKGROUND**

    A.     **The Policy**

RSUI issued Non-Profit Organization Management Liability Policy No. PP699949 to NYAP effective for the period from June 3, 2022 to June 3, 2023 (the "Policy Period"). (Am. Compl. ¶ 6; Ex. 1 to Am. Compl.; Am. Countercl. ¶ 6.)[1] Subject to the Policy's terms, conditions,

---

[1] A copy of the Policy is attached to the Amended Complaint as "Exhibit 1." "When determining whether to grant a motion for judgment on the pleadings, this Court 'may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the motion] so long as they are referred to in the complaint and are central to the claims contained therein.'" *Anadarko E&P Co. LP v. Northwood Energy Corp.*, 970 F. Supp. 2d 764, 769 (S.D. Ohio 2013) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)).

limitations, exclusions, and endorsements, the Policy provides coverage under a Directors and Officers Liability Coverage Section, an Employment Practices Liability ("EPL") Coverage Section, and a Fiduciary Liability Coverage Section. (Am. Compl. ¶ 7; Ex. 1 to Am. Compl. at Declarations; Am. Countercl. ¶ 7.) Insuring Agreement I(A) of the EPL Coverage Section states that RSUI shall pay "Loss" up to the Limit of Liability applicable to the EPL Coverage Section on behalf of the "Insured" in connection with any "Employment Practices Claim" first made against any "Insured" during the Policy Period and reported to RSUI in accordance with the Policy's notice and reporting provisions. (Am. Compl. ¶ 8; Ex. 1 to Am. Compl. at EPL Coverage Section § I(A); Am. Countercl. ¶ 8.)

"Employment Practices Claim" is defined in the Policy to mean any "Claim" for an "Employment Practices Wrongful Act." (Am. Compl. ¶ 9; Ex. 1 to Am. Compl. at EPL Coverage Section § III(C); Am. Countercl. ¶ 9.) "Claim" is defined in the EPL Coverage Section to mean, among other things and in relevant part: "A written demand for monetary or non-monetary relief solely where alleging an Employment Practices Wrongful Act, including: . . . [r]eceipt of a notice of charges . . . ." (Am. Compl. ¶ 10; Ex. 1 to Am. Compl. at EPL Coverage Section § III(A)(1)(c); Am. Countercl. ¶ 10.) "Employment Practices Wrongful Act" is defined in the Policy to mean, in pertinent part any actual or alleged "[w]rongful dismissal, discharge or termination (either actual or constructive) of employment . . ." and "[e]mployment related harassment (including but not limited to sexual harassment) . . . ." (Am. Compl. ¶ 11; Ex. 1 to Am. Compl.at EPL Coverage Section § III(D)(1) and (2); Am. Countercl. ¶ 11.)

"Insured" is defined in the EPL Coverage Section as any "Insured Organization" and/or "Insured Person." (Am. Compl. ¶ 12; Ex. 1 to Am. Compl. at EPL Coverage Section § III(E); Am. Countercl. ¶ 12.) "Insured Person" is defined in the EPL Coverage Section, in relevant part, to

3

mean "[a]ny past, present or future director, officer, trustee, 'Employee', advisory board member or any committee member of a duly constituted committee of the 'Insured Organization' . . . ." (Am. Compl. ¶ 13; Ex. 1 to Am. Compl. at EPL Coverage Section § III(F)(1); Am. Countercl. ¶ 13.) "Loss" is defined in the EPL Coverage Section to mean, in pertinent part and subject to several exceptions: "[D]amages (including back and front pay), settlements, judgments (including pre- and post-judgment interest on a covered judgment) and 'Defense Expenses.'" (Am. Compl. ¶ 14; Ex. 1 to Am. Compl. at EPL Coverage Section § G; Am. Countercl. ¶ 14.)

Section IV of the EPL Coverage Section, as amended by the "Sexual Misconduct and Child Abuse Exclusion," states that RSUI shall not be liable to make any payment for Loss arising out of or in connection with any Claim (including but not limited to any derivative or representative class actions) made against any Insured alleging, arising out of, based upon or attributable to or in any way involving, directly or indirectly, any "Sexual Misconduct," child abuse or neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person (the "Sexual Misconduct Exclusion"). (Am. Compl. ¶ 15; Ex. 1 to Am. Compl. at EPL Coverage Section § IV, as amended by Sexual Misconduct Exclusion.) "Sexual Misconduct" is defined in the Sexual Misconduct Exclusion as "any licentious, immoral or sexual behavior, sexual abuse, sexual assault or molestation or any sexual act against any individual." (Am. Compl. ¶ 16; Ex. 1 to Am. Compl. at EPL Coverage Section § IV, as amended by Sexual Misconduct Exclusion.)

The Policy states that it shall be the right and duty of RSUI to defend any Claim against any Insured for which coverage applies under the Policy. (Am. Compl. ¶ 17; Ex. 1 to Am. Compl. At Common Policy Terms & Conditions § V(A); Am. Countercl. ¶ 15.)

4

**B.     The Claim**

On or about January 27, 2023, NYAP received a litigation hold letter pertaining to an employee of NYAP (the "Employee") requesting copies of the Employee's personnel records (the "Litigation Hold Letter"). (Am. Compl. ¶ 18; Ex. A to Mot for J. on Pleadings; Am. Countercl. ¶ 16.)[2] On or about January 30, 2023, NYAP received a letter alleging that the Employee's supervisor sexually harassed the Employee, created a hostile work environment, and committed sexual misconduct, which resulted in the constructive discharge of the Employee (the "Demand Letter"). (Am. Compl. ¶ 19; Ex. B to Mot. for J. on Pleadings; Am. Countercl. ¶ 17.)[3] In the Demand Letter, the Employee's counsel asked NYAP to notify its insurance carrier of the allegations and indicated that, if the Claim was not resolved, litigation would ensue. (*Id.*) On or about May 23, 2023, NYAP received a Charge of Discrimination filed on behalf of the Employee with the Illinois Department of Human Rights alleging that the Employee's supervisor sexually harassed the Employee, created a hostile work environment, and committed sexual misconduct, which resulted in the constructive discharge of the Employee (the "Charge of Discrimination"). (Am. Compl. ¶ 20; Ex. D; Am. Countercl. ¶ 27.)[4]

**C.     RSUI's Coverage Position and This Coverage Action**

After RSUI was provided notice of the Litigation Hold Letter and the Demand Letter, on February 1, 2023, RSUI sent a letter to NYAP in which it indicated that there is no coverage for the Claim under the Policy due to the application of the Sexual Misconduct Exclusion, and reserved

---

[2] A copy of the Litigation Hold Letter was attached to RSUI's Motion for Judgment on the Pleadings as "Exhibit A" and was filed under seal on May 15, 2023 [ECF No. 17].

[3] A copy of the Demand Letter was attached to RSUI's Motion for Judgment on the Pleadings as "Exhibit B" and was filed under seal on May 15, 2023 [ECF No. 17].

[4] A copy of the Charge of Discrimination is attached hereto as "Exhibit D" and is being filed under seal in order to protect the identities of those involved in the Claim.

5

all of its rights under the Policy and at law (the "February 1, 2023 Denial Letter"). (Am. Compl. ¶ 21; Ex. C to Mot. for J. on Pleadings; Am. Countercl. ¶ 18.)[5] After RSUI was provided notice of the Charge of Discrimination, on June 12, 2023, counsel for RSUI sent another letter to NYAP in which it indicated again that there is no coverage for the Claim under the Policy due to the application of the Sexual Misconduct Exclusion, and reserved all of its rights under the Policy and at law (the "June 12, 2023 Denial Letter"). (Am. Compl. ¶ 22; Ex. E; Am. Countercl. ¶ 28.)[6]

On March 7, 2023, RSUI filed this coverage action against NYAP seeking a declaration with respect to its duties to defend and indemnify NYAP with respect to the Claim under the Policy. (ECF No. 1.) On April 18, 2023, NYAP filed an Answer and Counterclaim against RSUI, alleging the following causes of action: (1) breach of contract; (2) bad faith; and (3) declaratory judgment as to coverage under employment practices wrongful act. (ECF No. 10.) On May 12, 2023, RSUI filed its original Motion for Judgment on the Pleadings. (ECF No. 14.) On June 13, 2023, RSUI filed its Amended Complaint for Declaratory Judgment. (ECF No. 21.) On June 27, 2023, NYAP filed its Answer to Amended Complaint and Amended Counterclaim against RSUI. (ECF No. 22.)

## III. LEGAL ARGUMENT

### A. Judgment on the Pleadings Standard

The standard of review for a Rule 12(c) motion for judgment on the pleadings is identical to the standard for a motion to dismiss under Rule 12(b)(6). *Stanley v. Historic Basket, LLC*, No.

---

[5] A copy of the February 1, 2023 Denial Letter was attached to RSUI's Motion for Judgment on the Pleadings as "Exhibit C" and was filed under seal on May 15, 2023 [ECF No. 17].

[6] A copy of the June 12, 2023 Denial Letter is attached hereto as "Exhibit E" and is being filed under seal in order to protect the identities of those involved in the Claim.

2:22-cv-1783, 2023 U.S. Dist. LEXIS 52424, at *4 (S.D. Ohio Mar. 27, 2023). To survive a motion for judgment on the pleadings, the non-moving party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The Court need not accept as true unwarranted factual inferences or legal conclusions. *Vaduva v. City of Xenia*, 780 Fed. Appx. 331, 335 (6th Cir. 2019). Judgment on the pleadings should be granted when no material issue of fact exists and the moving party is entitled to judgment as a matter of law. *Id.*

    **B.**    **Principles of Interpretation of Insurance Contracts**

"Under Ohio law, 'an insurance policy is a contract whose interpretation is a matter of law.'" *Sys. Optics, Inc. v. Twin City Fire Ins. Co.*, No. 21-3556, 2022 U.S. App. LEXIS 5731, at *3 (6th Cir. Mar. 2, 2022) (quoting *Sauer v. Crews*, 140 Ohio St. 3d 314, 2014-Ohio-3655, 18 N.E.3d 410, 413 (2014)). "In undertaking that interpretation, Ohio courts examine the 'plain and ordinary meaning' of the policy's terms, read in context." *Id.* (quoting *World Harvest Church v. Grange Mut. Cas. Co.*, 148 Ohio St. 3d 11, 2016-Ohio-2913, 68 N.E.3d 738, 744 (2016)). Courts "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy." *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 87 Ohio St. 3d 270, 273 (1999) (citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 361, 678 N.E.2d 519 (1997)).

"The insured bears the burden to show that its loss was covered under the policy." *Chiquita Brands Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 1st Dist. Hamilton No. C-120019, 2013-Ohio-759, ¶ 9; *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 87 Ohio St. 3d 270, 273, 1999 Ohio 62, 719 N.E.2d 955 (1999) ("One who seeks to recover on an insurance policy generally has the burden of demonstrating coverage under the policy and then proving a loss."); *Fairfield*

7

*Machine Co. v. Aetna Cas. & Sur. Co.*, 7th Dist. Columbiana No. 2000 CO 14, 2001-Ohio-3407, ¶ 22 ("The insured generally has the burden of demonstrating coverage under the policy and then proving a loss."). "Under Ohio law, insurance companies bear the burden of demonstrating that an insurance claim falls within an exclusion to coverage." *Bondex Int'l, Inc. v. Hartford Accident & Indem. Co.*, 667 F.3d 669, 677 (6th Cir. 2011) (citing *Cont'l Ins. Co. v. Louis Marx Co.*, 64 Ohio St. 2d 399, 415 N.E.2d 315, 317 (1980)). "Where the policy language sets forth the relevant coverages and exclusions in unambiguous terms, [the court] must apply the terms as written . . . ." *Id.* (citing *Cinn. Indem. Co. v. Martin*, 85 Ohio St. 3d 604, 1999 Ohio 322, 710 N.E.2d 677, 679 (1999)).

An insurer has a duty to defend when the allegations in the claim "potentially state a claim that is within the policy's coverage." *Ganim v. Columbia Cas. Co.*, No. 1:07-cv-1497, 2008 U.S. Dist. LEXIS 45251, at *14 (N.D. Ohio Jun. 9, 2008). Although "an insurer's duty to defend is quite broad, it nonetheless is not all encompassing." *Camp Frederick v. D&G Ents., Inc.*, 7th Dist. Columbiana No. 98 CO 77, 1999 Ohio App. LEXIS 5949, at *8 (Dec. 10, 1999). "An insurer's duty to defend will be held to have been absolved if it is determined that there is no possibility of coverage under the policy as related to the allegations in the complaint." *Id.* "Similarly, if allegations in a complaint raise claims which are excluded under the policies of insurance, the duty to defend is extinguished." *Id.* at *9. "Whether an insurer has a duty to defend is determined by the scope of the allegations in the underlying complaint." *Hauck Holdings Columbia SC, LLC v. Target Corp.*, No. C-1-08-682, 2010 U.S. Dist. LEXIS 28512, at *23 (S.D. Ohio Mar. 25, 2010) (citing *City of Sharonville v. Am. Employers Ins. Co.*, 158 Ohio App.3d 576, 581, 2004 Ohio 4664, 818 N.E.2d 295, 299 (2004)).

### C. There Is No Coverage for the Claim Under the Policy.

#### 1. RSUI Does Not Have a Duty to Defend NYAP in Connection with the Claim.

RSUI does not have a duty to defend NYAP in connection with the Claim because the Claim is excluded from coverage under the Sexual Misconduct Exclusion, which broadly precludes coverage for any Claim alleging, arising out of, based upon or attributable to, or in any way involving, directly or indirectly, any sexual abuse, sexual assault, or sexual act. (Am. Compl. ¶¶ 15-16; Ex. 1 to Am. Compl. at EPL Coverage Section § IV, as amended by Sexual Misconduct Exclusion.)

Courts in Ohio and applying Ohio law have held that the phrase "arising out of," when used in an exclusion in a liability policy, is unambiguous, broad, and means "flowing from," "having its origin in," "growing out of," or "originating in." *See Stickovich v. Cleveland,* 143 Ohio App.3d 13, 37, 2001 Ohio 4117, 757 N.E.2d 50 (Ohio Ct. App. 2001) ("This court has held that arising out of means flowing from or having its origin in. The term arising out of has also been defined to mean originating from, growing out of, or flowing from.") (internal citations omitted); *Lehrner v. Safeco Ins./Am. States Ins. Co.*, 171 Ohio App. 3d 570, 580, 2007-Ohio-795, 872 N.E.2d 295 (Ohio Ct. App. 2007) ("[W]e see no ambiguity in the policy's exclusionary language . . . . [The phrase 'arises out of'] is unambiguous. 'Arise' means 'to originate; to stem from' or 'to result from.'"); *Gemini Ins. Co. v. Potts,* No. 2:16-cv-612, 2020 U.S. Dist. LEXIS 124027, at *10 (S.D. Ohio Jul. 15, 2020) (no coverage for claim under "broad" ERISA exclusion, which applied to any claim or claim expense arising out of ERISA violations); *Wright v. Larschied*, 3d Dist. Allen No. 1-14-02, 2014-Ohio-3772, ¶ 28 (no coverage for claim under "broad" exclusion that precluded coverage for any bodily injury arising out of an actual or threatened assault or battery).

9

Moreover, courts throughout the country have found that exclusions containing the phrase "in any way involving," like the Sexual Misconduct Exclusion here, are "staggeringly broad." *US HF Cellular Commc'ns, LLC v. Scottsdale Ins. Co.*, 776 Fed. Appx. 275, 289 (6th Cir. 2019) (no coverage for claim under warranty exclusion containing "in any way involving" language); *Global Fitness Holdings, LLC v. Navigators Mgmt. Co.*, 854 Fed. Appx. 719, 721-22 (6th Cir. 2021) (no coverage for claim under contractual liability exclusion containing "in any way involving" language); *Clark Sch. for Creative Learning, Inc. v. Phila. Indem. Ins. Co.*, 734 F.3d 51, 56 (1st Cir. 2013) (holding that "in any way involving" acts as a "mop-up clause, intended to exclude anything not already excluded by the other clauses," including "arising out of").

In *Madison Sq. Boys & Girls Club, Inc. v. Atlantic Specialty Ins. Co.*, the court interpreted a similar sexual misconduct exclusion and found that it operated to preclude coverage for lawsuits against the insured. In that case, the insured sought coverage for claims of sexual abuse of children who attended the insured's youth development programs under the EPL coverage section of a not-for-profit organization management liability policy. 70 Misc. 3d 1018, 1020-28, 140 N.Y.S.3d 357 (N.Y. Cnty. Sup. Ct. 2020). The claims of sexual abuse ultimately resulted in various lawsuits being filed against the insured alleging that the insured negligently failed to supervise personnel, permitted staff unfettered access to children, and failed to address sexual abuse. *Id.* at 1025-28. The policy contained a sexual conduct and child abuse endorsement, which stated that no coverage was available for any "Claim" "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged 'Sexual Misconduct' . . . or child abuse or neglect." *Id.* at 1023. "Sexual Misconduct" was defined as "any sexual abuse, sexual assault or molestation intended to lead to or culminating in any sexual act against any individual."

10

*Id.* at 1023-24. The court found that all of the claims asserted against the insured, including the claim of negligent supervision, were barred by the sexual misconduct exclusion, and stated: "The clear, unambiguous terms of this exclusionary endorsement plainly bars coverage for any claim arising out of sexual misconduct." *Id.* at 1034.

Here, like in *Madison*, it is undisputed that the Claim arises from and/or involves allegations of sexual abuse, misconduct, and acts. (Ex. B to Mot. for J. on Pleadings; Ex. C.) As such, RSUI does not have a duty to defend NYAP due to the application of the Sexual Misconduct Exclusion. (Am. Compl. ¶¶ 15-16; Ex. 1 to Am. Compl. at EPL Coverage Section § IV, as amended by Sexual Misconduct Exclusion.) RSUI is, therefore, entitled to judgment on the pleadings in its favor on RSUI's claims and on Counts I and II of NYAP's Amended Counterclaim.

    **2.    RSUI Does Not Have a Duty to Indemnify NYAP in Connection with the Claim.**

Because RSUI does not have a duty to defend the Claim, it also has no duty to indemnify NYAP in connection with the Claim. "The duty to defend is broader than the duty to indemnify; therefore, in the absence of a duty to defend, there is no duty to indemnify." *Maxum Indem. Co. v. Robbins Co.*, 784 Fed. Appx. 366, 371 (6th Cir. 2019) (citing *Granger v. Auto-Owners Ins.*, 144 Ohio St. 3d 57, 2015-Ohio-3279, 40 N.E.3d 1110, 1115 (2015)); *Mid-Continent Excess & Surplus Ins. Co. v. Experiential Sys., Inc.*, No. 1:19-cv-02365, 2022 U.S. Dist. LEXIS 3908, at *30 (N.D. Ohio Jan. 7, 2022) ("Moreover, because the duty to defend is broader than the duty to indemnify, there can be no duty to indemnify where there is no duty to defend.") As such, RSUI is entitled to judgment on the pleadings in its favor on Counts I and III of NYAP's Amended Counterclaim.

### 3. NYAP's Claim for Bad Faith Fails as a Matter of Law Because There Is No Coverage for the Claim Under the Policy.

Because there is no coverage for the Claim under the Policy, NYAP's claim for bad faith also fails as a matter of law. Ohio courts and courts applying Ohio law have consistently held that, where there is no coverage for a claim under an insurance policy, an insured cannot be held to have acted in bad faith in denying coverage for that claim. *Asp v. Ohio Med. Transp., Inc.*, No. 00AP-958, 2001 Ohio App. LEXIS 2865, at *14 (Ohio Ct. App. Jun. 28, 2001) ("[The insured]'s third assignment of error, which alleged [the insurer] acted in bad faith in denying coverage, is necessarily overruled because coverage was not available to [the insured] as a matter of law."); *Paskel v. Allstate Ins.*, No. 98-T-0109, 1999 Ohio App. LEXIS 5755, at *7-8 (Ohio Ct. App. Dec. 3, 1999) ("since this court determined that appellee did not have an obligation to pay appellants' claim, there was no duty to deal in good faith. Thus, because no policy was in effect, appellee did not violate the terms of the policy with appellants."); *Stafford v. Jewelers Mut. Ins. Co.*, 554 Fed. Appx. 360, 376 (6th Cir. 2014) (applying Ohio law) (recognizing that a determination of whether the insurer had a duty to defend would resolve the insured's bad-faith claim); *see also Warren v. Fed. Ins. Co.*, 358 Fed. Appx. 670, 676 (6th Cir. 2009) (applying Ohio law); *Toledo-Lucas Cnty. Port Auth. v. Axa Marine & Aviation Ins. (UK) Ltd.*, 220 F. Supp. 2d 868, 873 (N.D. Ohio 2002) (applying Ohio law).

As Ohio's Tenth District Court of Appeals has stated, "'[o]bviously, if a reason for a coverage denial is correct, it is per se reasonable.'" *Pasco v. State Auto. Mut. Ins. Co.*, No. 99AP-430, 1999 Ohio App. LEXIS 6492, at *16-17 (Ohio Ct. App. Dec. 21, 1999) (quoting *GRE Ins. Gp. v. Int'l EPDM Rubber Roofing Sys., Inc.*, No. L-98-1387, 1999 Ohio App. LEXIS 1926 (Ohio Ct. App. Apr. 30, 1999)). Therefore, as a matter of law, because RSUI did not breach the Policy when it denied coverage for the Claim, RSUI is entitled to judgment on the pleadings in its favor

on Count II of NYAP's Amended Counterclaim.

**IV. CONCLUSION**

For the foregoing reasons, RSUI respectfully submits that it is entitled to judgment on the pleadings on its claims against NYAP and on NYAP's claims against it.

Respectfully submitted,

/s/ Sabrina Haurin
Sabrina Haurin (0079321)
Jolene S. Griffith (0084940)
BAILEY CAVALIERI LLC
10 West Broad Street, Suite 2100
Columbus, Ohio 43215-3422
Telephone: (614) 221-3155
shaurin@baileycav.com
jgrifith@baileycav.com

Counsel for Plaintiff/Counter-Defendant
RSUI Indemnity Company

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2023, I served the foregoing on counsel for Defendant/Counter-Claimant via the Court's CM/ECF system.

/s/ Sabrina Haurin
Sabrina Haurin (0079321)

13