UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RSUI Indemnity Company,**

    **Plaintiff,**

v.

**National Youth Advocate Program, Inc.,**

    **Defendant.**

Case No. 2:23-cv-891

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

RSUI Indemnity Company ("Plaintiff") moves for judgment on the pleadings on its claim against Youth Advocate Program, Inc. ("Defendant") and on Defendant's counterclaims. Mot., ECF No. 24. For the following reasons, Plaintiff's motion is **GRANTED**.

### I. FACTS[1]

Defendant is a nonprofit corporation. Counterclaim ¶ 1, ECF No. 22. Plaintiff provides Defendant with an insurance policy ("Policy") that includes coverage for, *inter alia*, losses incurred as a result of an employee's wrongful conduct. *Id.* ¶ 7.

On January 30, 2023, Defendant received a letter (the "Letter") alleging that one of its supervisors (the "Supervisor") sexually harassed and assaulted an

---

[1] The Court accepts Defendant's factual allegations as true for Plaintiff's motion. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

employee (the "Employee"). *Id.* ¶ 17; *see also* Letter, ECF No. 17-1. The Letter indicated that Employee believed she had several causes of action against Defendant, and it represented that Employee would sue if the parties could not informally resolve her claims (the "Claim"). Counterclaim ¶ 17, ECF No. 22; *see also* Letter, ECF No. 17-1. Defendant told Plaintiff about the Letter. Amend. Compl. ¶ 21, ECF No. 21.

On February 1, 2023, Plaintiff told Defendant it would not cover the Claim because, in Plaintiff's view, any such claim would fall into the Policy's "Sexual Misconduct Exclusion" (the "Exclusion"). Counterclaim ¶ 18, ECF No. 22. According to Defendant, Plaintiff made that decision without conducting any investigation and failed to follow its internal policies. *Id.* ¶¶ 19–26. In May 2023, Defendant received a charge of discrimination related to Employee's allegations from the Illinois Department of Human Rights, which is Illinois's Equal Employment Opportunity Commission ("EEOC") analogue. Amend. Compl. ¶ 20, ECF No. 21.

Plaintiff proactively brought this lawsuit, seeking a declaratory judgment about whether the Exclusion bars coverage for the Claim. *See generally, id.* Defendant asserts three counterclaims: breach of contract, bad faith, and its own declaratory judgment claim. Counterclaim ¶¶ 36–47, ECF No. 22.

## II. STANDARD OF REVIEW

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be

granted." *Fritz*, 592 F.3d at 722 (citation omitted). A claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Twombly*, 550 U.S. at 556. A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)[.]" *Id.* at 555 (internal citations omitted). At the motion-to-dismiss stage, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation marks and citations omitted). However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### III. ANALYSIS

**A. Are the claims ripe?**

Defendant argues that Plaintiff's declaratory judgment claim is not ripe because, according to Defendant, it has not made a "claim" on its Policy based

on the events outlined above. Defendant argues that, if it has not yet made a claim, it is premature to decide whether Plaintiff would have any obligation to cover the same. Puzzlingly, Defendant does not explain how its own breach of contract claim, based on Plaintiff's allegedly improper denial of coverage for the Claim, would not also be premature.

The Policy defines a "claim" as a "written demand for monetary or non-monetary relief solely alleging an Employment Practices Wrongful Act[.]"[2] Policy, ECF No. 21-1, at PAGEID # 267. The Policy lists some examples of such demands, including service of a complaint, a written request to toll the statute of limitations, or a notice of a charge from the Equal Employment Opportunity Commission (or an equivalent state agency). *Id.* The Policy, however, does not limit the definition of "claim" to the given examples. *Id.*

Here, Employee's Letter does not demand a certain dollar amount or specific non-monetary relief, but it reads in relevant part:

> Please let me know by February 3, 2023, whether [Defendant]/its insurance carrier is interested in attempting to reach a settlement of these claims. Otherwise we intend to pseudonymously file [Employee's claims] with the Illinois Department of Human Rights after which we will file her other claims (also pseudonymously) in the Circuit Court of Cook County, Illinois with personal injury co-counsel.

Letter, ECF No. 17-1.

---

[2] Although perhaps not immediately apparent from this quote, a "claim" under the Policy is clearly some demand or allegation from a third party to Defendant, not a demand for coverage from Defendant to Plaintiff.

Taken as a whole, the Letter puts Defendant on notice that Employee believes she has legal claims against Defendant and that she also believes she is entitled to some kind of relief for the same. That is, per the Policy, a "claim." Defendant, in its Amended Counterclaim, seems to acknowledge this by saying that Employee's "Claim is covered under the Policy." Counter Complaint ¶ 38, ECF No. 22. In addition, the Letter is sufficiently similar to the examples of a "claim" listed in the Policy. Accordingly, there has been a "claim" under the Policy and, therefore, all the claims are ripe for review.[3]

Defendant also argues that Plaintiff's claim is not ripe because it has not yet incurred a loss in the form of a settlement or judgment. Resp., ECF No. 28. Although that may be a correct factual statement, it makes no difference. The Policy imposes on Plaintiff a duty to defend, not just a duty to indemnify. Policy, ECF No. 21-1, at PAGEID # 269. Thus, if the Policy covers the Claim, Plaintiff has a duty to cover all costs related to responding to the same, including any costs incurred from responding to the Letter or Employee's subsequent civil rights charge. Accordingly, this argument lacks merit, and the parties' claims are ripe.

---

[3] Moreover, even if the Letter was not a "claim," the May 2023 charge from Illinois's EEOC analogue was certainly a "claim."

### B. Does the Policy cover the Claim?

"An insurance policy is a contract whose interpretation is a matter of law." *Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio, 2008) (quotation marks and citation omitted). The purpose of contract interpretation is to "ascertain the intent of the parties." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quotation marks and citation omitted). "The intent of the parties is presumed to reside in the language they chose to use in their agreement." *Id.* (quoting *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio, 1996)).

When considering insurance contracts, courts must apply the "clear and unambiguous" terms to the facts "without engaging in any construction." *Toledo-Lucas Cty. Port Auth. v. Axa Marine & Aviation Ins. (UK), Ltd.*, 368 F.3d 524, 530 (6th Cir. 2004) (quotation marks and citation omitted). When an insurance contract is subject to more than one interpretation, however, a court must "construe the terms strictly against the insurer and in favor of the insured." *Id.* (cleaned up).

At issue here is whether the Claim is covered by the Policy. Whether the Claim is covered by the Policy turns on whether the Exclusion applies to the Claim.

The language of the Exclusion is as follows:

> The Insurer shall not be liable to make any payment for Loss arising out of or in connection with any Claim (including but not limited to any derivative or representative class actions) made against any Insured alleging, arising out of, based upon or attributable to or in any way involving, directly or indirectly, any Sexual Misconduct, child abuse or

neglect, including but not limited to the employment, supervision, reporting to the proper authorities, failure to so report or retention of any person.

Sexual Misconduct means any licentious, immoral or sexual behavior, sexual abuse, sexual assault or molestation or any sexual act against any individual.

Policy, ECF No. 21-1, at PAGEID # 254.

Defendant does not argue that the Claim falls outside the language of the Exclusion. Nor could it: the Claim is based on allegations of sexual harassment—specifically sexual assault. *See* Letter, ECF No. 17-1.

Instead, Defendant argues the Exclusion cannot apply because it would render the harassment coverage illusory. Resp., ECF No. 28. The harassment coverage provides that Plaintiff shall pay the loss up to the limit of liability for, among other things, any "actual or alleged . . . Employment related harassment (including but not limited to sexual harassment)." Policy, ECF No. 21-1, at PAGEID # 268.

This argument fails. Another district court in this circuit has recently explained illusory insurance provisions as follows:

> An insurance provision is illusory when it appears to grant a benefit to the insured, although in reality it does not. . . . However, where the insurance contract contains some coverage for the insured, it is not illusory. . . . So long as an exclusion does not eliminate all coverage under a policy, it will not render the policy illusory.

*Rogers v. Sure Conveyors, Inc.*, 510 F. Supp. 3d 515, 521 (N.D. Ohio 2021) (cleaned up and quoting Ohio law).

Here, the Exclusion does not render the Policy illusory. First, the Exclusion does not eliminate *all* coverage under the Policy: almost all of the types of claims covered are unaffected by the Exclusion (*e.g.*, coverage for alleged violations of the Fair Labor Standards Act or the Americans with Disabilities Act). That alone defeats Defendant's position. *See Rogers*, 510 F. Supp. 3d at 521 ("Ohio law holds the applicable standard is whether the exclusion *eliminates all coverage* under a policy" (emphasis added; quotation marks and citation omitted)).

However, even turning to the harassment provision, clearly many types of harassment (*e.g.*, racial harassment) would not be affected by the Exclusion. The Exclusion thus does not render even the harassment provision illusory, were that the test.

Finally, even the "sexual harassment" provision is not *entirely* nullified by the Exclusion. As Plaintiff points out, "sexual harassment" covers more than sexual actions, it covers all harassment based on sex. *Cf. Williams v. Gen. Motors Corp.*, 187 F.3d 553, 564–66 (6th Cir. 1999) (explaining, in a Title VII case, that "harassing behavior that is not sexually explicit but is directed at women and motivated by discriminatory animus against women satisfies the 'based on sex' requirement" (citing cases)). That type of sexual harassment is thus covered despite the Exclusion.

In sum, the exclusion does not render the Policy—or any part of it—illusory. Accordingly, it is enforceable.

Defendant disagrees, citing to several cases. Although these cases reach results that seem to support Defendant's position, these cases do not apply Ohio law and, therefore, are ultimately unhelpful to Defendant. *See Davis-Ruiz Corp. v. Mid-Continent Cas. Co.*, 281 F. App'x 267, 270 (5th Cir. 2008) (using Texas law to consider whether an insurance exclusion applied); *Century Sur. Co. v. Gene Pira, Inc.*, No. CV 13-07289 DDP AGRX, 2014 WL 6474987, at *2 (C.D. Cal. Nov. 19, 2014) (California law).

Defendant also argues that, if the Court adopts Plaintiff's position, Plaintiff would not need to cover any claims related to interactions between Employee and Supervisor "no matter how remote in time and no matter how different the conduct and circumstances." Resp. 11, ECF No. 28. The Court need not determine whether Defendant is correct because the conduct underlying the Claim *does* all relate to the alleged sexual harassment, or is itself alleged sexual harassment. The Court will not consider whether the Policy would cover claims arising from some other, hypothetical interactions between Supervisor and Employee. Thus, Defendant's argument is unavailing.

Because the Exclusion is enforceable, and because the Claim falls squarely within the Exclusion, Plaintiff has no duty to defend or indemnify Defendant on the Claim. As a result, Plaintiff is entitled to judgment in its favor on its declaratory judgment claim, Defendant's declaratory judgment counterclaim, and Defendant's breach of contract counterclaim.

## C. Can Defendant pursue a bad-faith claim?

Because Plaintiff has no duty to cover the Claim, it did not act in bad faith by denying the same. *E.g., Asp v. Ohio Med. Transp., Inc.*, No. 00AP-958, 2001 WL 721854, at *5 (Ohio Ct. App. June 28, 2001) ("Similarly, [the] third assignment of error, which alleged [the insurer] acted in bad faith in denying coverage, is necessarily overruled because coverage was not available [.]").

Defendant argues against this conclusion. According to Defendant, the fact that Plaintiff "failed" to properly investigate the Claim before denying coverage can be the basis of a bad-faith claim, even if Plaintiff ultimately had no duty to cover the Claim. Resp., ECF No. 28.

Not so. Because Plaintiff had no obligation to cover the Claim, Defendant cannot maintain a failure-to-investigate claim against Plaintiff. *See Pasco v. State Auto. Mut. Ins. Co.*, No. 99AP-430, 1999 WL 1221633, at *5–6 (Ohio Ct. App. Dec. 21, 1999) (affirming the trial court's conclusion that "because the policies at issue did not cover the damages arising out of the CSPA violations, appellant could not maintain a bad-faith claim against appellee related to appellee's handling of such claims[,]" including an alleged failure to investigate).

In sum, because the Policy does not cover the Claim, Defendant's bad-faith claim fails.

## IV. CONCLUSION

For these reasons, Plaintiff's motion is **GRANTED**; Plaintiff is entitled to judgment in its favor on all claims. Plaintiff shall submit a proposed declaratory judgment that reflects this Opinion and Order **WITHIN FOURTEEN DAYS**, if Plaintiff believes a further Court order is necessary.

The Clerk shall enter judgment for Plaintiff and close the case.

**IT IS SO ORDERED.**

*[signature]*

**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**